1  FRANK M. FLANSBURG III, ESQ., Nevada Bar No. 6974
   fflansburg@bhfs.com
2  BROWNSTEIN HYATT FARBER SCHRECK, LLP
   100 North City Parkway, Suite 1600
3  Las Vegas, NV  89106-4614
   Telephone:  702.382.2101
4  Facsimile:  702.382.8135

5  AARON F. MINER, ESQ. (*pro hac* forthcoming)
   Aaron.Miner@arnoldporter.com
6  SASHA ZHENG, ESQ. (*pro hac* forthcoming)
   Sasha.Zheng@arnoldporter.com
7  ANDREW C. JOHNSON, ESQ. (*pro hac* forthcoming)
   Andrew.Johnson@arnoldporter.com
8  KELLEY CHANGFONG-HAGEN, ESQ. (*pro hac*
   forthcoming)
9  Kelley.Changfong-Hagen@arnoldporter.com
   AIDAN MULRY, ESQ. (*pro hac* forthcoming)
10 Aidan.Mulry@arnoldporter.com
   ARNOLD & PORTER KAYE SCHOLER LLP
11 250 West 55th Street
   New York, NY 10019-9710
12 Telephone:  212.836.7811

13 *Attorneys for Plaintiff HF Foods Group Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HF FOODS GROUP INC., a Delaware corporation, | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| MAODONG XU; ZHOU MIN NI; FAI LAM, in his capacity as Trustee of THE IRREVOCABLE TRUST FOR RAYMOND NI; WEIHUI KWOK; and YUANYUAN WU, | |
| Defendants. | |

HF Foods Group Inc. ("HF Foods" or the "Company"), by its attorneys, Brownstein Hyatt Farber Schreck, LLP and Arnold & Porter Kaye Scholer LLP, hereby files its Complaint against Defendants Maodong Xu, Zhou Min Ni, Fai Lam in his capacity as Trustee of the Irrevocable Trust for Raymond Ni (the "Trust"), Weihui Kwok, and Yuanyuan Wu (together, the "Xu/Ni Group") alleges as follows, on information as to itself and on information and belief as to others:

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**NATURE OF THE ACTION**

1.      This is an action against a group of serial wrongdoers who are acting in concert to effectuate an illegal hostile takeover of HF Foods. Specifically, the Xu/Ni Group is attempting to seize control of HF Foods by two means, both of which violate the federal securities laws: (1) by fraudulently soliciting proxies for an illegitimate slate of directors composed of an assortment of close family members and cat's paws contrary to the Company's bylaws; and (2) by strong-arming current HF Foods stockholder-employees into tendering their Company shares in violation of the Williams Act of 1968.

2.      To perfect their hostile takeover, the Xu/Ni Group is engaged in an unlawful campaign to pool their ownership interests and resources, dupe stockholders into returning proxy votes for already-rejected director candidates, and seize control of HF Foods without making complete and accurate disclosure of their intentions to do so to HF Foods' stockholders.  Thus, it has flouted the requirements of the federal securities laws, which recognize the primacy of providing complete and accurate information to investors who are making investment and voting decisions, particularly in connection with a proxy contest.

**JURISDICTION AND VENUE**

3.      This action arises under Sections 13(d),14(a), and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78m(d) and 78n(a), and the applicable rules and regulations of the SEC. This Court has jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  The acts complained of below have been carried out by use of the means and instrumentalities of interstate commerce.

4.      Venue in this District is proper under Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Acts and transactions complained of below have occurred and continue to take place in this District.  Among other things, defendants' illegal tender offer was made in this District, Plaintiff's bona fide proxy solicitation materials were transmitted by Plaintiff in this District, Plaintiff's headquarters and principal place of business is in this District, defendants' illegal proxy solicitation materials were filed with the SEC in anticipation and for the purpose of their distribution to HF Food stockholders, including stockholders located within this District, in order to obtain proxies to

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

2

be used at HF Foods upcoming Annual Meeting, and HF Foods annual shareholder meeting will occur in this District on June 1, 2023.

## THE PARTIES

5.       Plaintiff HF Foods Group Inc. is a Delaware corporation with its principal executive offices located at 6325 South Rainbow Boulevard, Suite 420, Las Vegas, Nevada 89118. HF Foods is publicly traded on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "HFFG."

6.       Defendant Maodong Xu is a member of the Xu/Ni Group and is chairman and CEO of Fresh2 Ecommerce. Upon information and belief, Defendant Xu is a resident of New York.

7.       Defendant Zhou Min Ni is a member of the Xu/Ni Group and is the co-founder of HF Foods.  Ni served as the Company's chairman from 2018 until he resigned effective February 23, 2021, and as the Company's Co-CEO from November 2019 until he resigned effective February 23, 2021.  Ni previously served as the Company's sole CEO from August 2018 to November 2019, and as HF Foods' CEO and chairman since the Company's founding in 1997.  According to the Company's Schedule 14A filed on April 28, 2023, Defendant Ni beneficially owns 5,568,975 shares of Company stock. Upon information and belief, Defendant Ni is a resident of North Carolina.

8.       Defendant Weihui ("Vincent") Kwok is a member of the Xu/Ni Group and is also named as a Reporting Person on the Schedule 13D/A filed with the SEC on May 5, 2023. According to the Schedule 13D/A, Defendant Kwok claimed to own 399,397 shares of Company stock. Together with Defendant Wu and the Trust, Defendant Kwok was also the proponent of an alternate slate of candidates for the HF Foods board of directors submitted on April 10, 2023, and subsequently filed a fraudulent proxy statement on Schedule 14A on May 5, 2023.  Defendant Kwok was an employee of HF Foods until he was terminated for, among other things, his involvement in paying nearly $200,000 in illicit kickbacks to a Company supplier in the course of his employment with the Company.

9.       Defendant Yuanyuan Wu is a member of the Xu/Ni Group and is also named as a Reporting Person on the Schedule 13D/A filed with the SEC on May 5, 2023. According to the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

25658837.2

Schedule 13D/A, Defendant Wu claimed to own 44,250 shares of Company stock. Together with Defendant Kwok and the Trust, Defendant Wu was also the proponent of an alternate slate of candidates for the HF Foods board of directors on April 10, 2023, and subsequently filed a fraudulent proxy statement on Schedule 14A on May 5, 2023.

10.     The Trust is a duly organized trust under the laws of North Carolina. The Trust is also named as a Reporting Person on Defendants' Schedule 13D/A filed with the SEC on May 5, 2023. According to the Company's Schedule 14A filed on April 28, 2023, the Trust beneficially owns 5,591,553 shares of Company stock. Together with Defendants Wu and Kwok, the Trust was also the proponent of an alternate slate of candidates for the HF Foods board of directors on April 10, 2023, and subsequently filed a fraudulent proxy statement on Schedule 14A on May 5, 2023. Raymond Ni is the son of Zhou Min Ni.

11.     Defendant Fai Lam is the Trustee of the Trust, and in that capacity, is a member of the Xu/Ni Group. Defendant Fai Lam signed Defendants' Schedule 13D/A and 14A in his capacity as Trustee.

## BACKGROUND

**HF Foods Inc.**

12.     HF Foods, headquartered in Las Vegas, Nevada, is a leading marketer and distributor of fresh produce, frozen and dry food, and non-food products to primarily Asian/Chinese restaurants and other foodservice customers throughout the United States.

13.     HF Foods is a leading marketer and distributor of fresh produce, frozen and dry food, and non-food products to primarily Asian/Chinese restaurants and other foodservice customers throughout the United States. HF Foods aims to supply the increasing demand for Asian American restaurant cuisine, leveraging its nationwide network of distribution centers and its strong relations with growers and suppliers of fresh, high-quality specialty restaurant food products and supplies in the US, South America, and China.

14.     While HF Foods is publicly traded on NASDAQ, its stock is not widely held, and many of its significant stockholders are current and former Company employees or other insiders (*e.g.*, family members of employees).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

25658837.2

**The Xu/Ni Group**

15.    Defendant Zhou Min Ni and his son Raymond Ni, who are now colluding with other wrongdoers to undermine HF Foods' operations, have a long and sordid history of raiding the Company for their personal gain at stockholders' expense.

16.    On March 23, 2020, an analyst report published by Hindenburg Research alleged certain improprieties in the Company's operations, and in response to those allegations, the Company's Board of Directors appointed a Special Committee of Independent Directors (the "Special Investigation Committee") to conduct an internal independent investigation with the assistance of counsel.  The analyst report raised a number of serious allegations arising from the Company's purported related-party transactions with entities that had "(a) minimal or no online presence, (b) no signage or apparent operations at their respective registered addresses and (c) entities held out as separate companies to investors to appear to actually be operating as part of HF."  The report concluded that "insiders are using these dozens of related-party transactions to suck cash out of the business, eventually leaving shareholders with a hollow, debt-laden company."  During the relevant time period of the events raised in the analyst report, the Company was led by chairman and co-CEO Zhou Min Ni, who originally founded HF Foods.  Many of the related-party transactions flagged by the analyst report were with entities owned or controlled by Defendant Zhou Min Ni and/or members of Defendant Ni's family.

**Defendant Ni's Prior Misconduct While Chairman and CEO of the Company**

*Undisclosed Subsidiary Purchases for the Benefit of Defendant Ni and his Family, Lacking Any Business Justification*

17.    The analyst report alleged that one of the Company's subsidiaries, Truse Trucking, Inc., which purportedly owned refrigeration trucks used to deliver food products to the Company's

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

25658837.2

customers, also owned an undisclosed fleet of luxury cars with vanity license plates such as "RIDEIT69", "MAKNBBYZ", "UPGIRL", "H0P0NIT", "99Pr0BZ", and "BENT0VER".



| Cars with titles owned by and registered to Truse Trucking | MSRP |
|---|---|
| 2015 Audi Prestige S5 | $60,150 |
| 2015 Ferrari 458 Spider | $263,553 |
| 2017 Ferrari F12 Berlinetta | $319,995 |
| 2005 Ford GT | $151,245 |
| 2003 Ferrari Modena 360 | $145,210 |
| 2016 Porsche GTS Cayenne | $95,500 |
| 2014 Ferrari 458 Speciale | $288,000 |
| 2013 Bentley Continental | $193,300 |
| **Total** | **$1,545,203** |

18.    The analyst report also flagged eight luxury vehicles valued at approximately $1.5 million registered to and owned by Truse Trucking, Inc.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

6

25658837.2

19.    There was no valid business justification for the Company's purchases of these luxury cars.  Rather, they were purchased for personal use by Defendant Ni's then-teenage son, Raymond Ni, as demonstrated by Raymond Ni's posts on his personal Instagram account, in which he referred to the cars as his own:





25658837.2

20.    Despite the use of these vehicles by Defendant Ni's son, these luxury cars were not disclosed as part of Defendant Ni's compensation from the Company.

***Related-Party Transactions Used to Siphon Company Funds to Defendant Ni***

21.    In 2019, the Company transacted with 43 related-party entities, and reported more than $40 million in purchases and $19.3 million in sales to related-party entities in the Form 10-K filed on March 16, 2020.

22.    However, most of the reported related party transactions contained in the Company's filings were with companies owned by Defendant Ni or his immediate family members, including Raymond Ni:

| # | Name of Related Party | For the six months ended June 30 2019 | For the years ended December 31, 2018 | 2017 |
|---|---|---|---|---|
| (1) | Golden Poultry, LLC | $ 3,548,693 | $ 5,641,599 | $ 7,065,901 |
| (2) | Eastern Fresh LLC | 3,442,730 | 7,140,754 | 6,486,180 |
| (3) | Fujian RongFeng Plastic Co., Ltd. | 3,066,655 | 5,350,755 | 4,644,437 |
| (4) | NC Good Taste Noodle Inc. | 2,261,864 | 3,881,433 | 4,060,177 |
| (5) | Fuzhou (Hanfeng) Information Tec. | 1,651,944 | 3,130,875 | 2,832,933 |
| (6) | Fortune One Foods Inc. | 0 | - | 1,318,459 |
| (7) | N&F Logistic, Inc. | 785,968 | 1,206,106 | 1,273,190 |
| (8) | Collegepoint Distribution, LLC | 0 | - | 1,100,100 |
| (9) | Enson Seafood GA Inc | 102,895 | 664,770 | 926,427 |
| (10) | New Day Top Trading Inc. | 0 | - | 761,020 |
| (11) | Enson Trading LLC (Eternal Food Service Inc.) | 166,056 | 415,662 | 616,639 |
| (12) | Ocean Pacific Seafood Group | 372,805 | 687,225 | 524,722 |
| (13) | Allstate Trading Company Inc. | 111,213 | 43,212 | 327,821 |
| (14 | Eagle Food Service LLC | 171,965 | 270,368 | 149,714 |
| (15) | Han Feng Global Inc. d/b/a NSG International | 0 | 119,092 | 86,092 |
| (16) | Great Wall Seafood Florida Inc. | 0 | - | 23,542 |
| (17) | UGO USA INC. | 348,523 | 710,224 | 19,151 |
| (18) | iUnited Services | 0 | - | 4,500 |
| (19) | Revolution Industry, LLC | 1,266,191 | 2,122,240 | — |
| (20) | First Choice Seafood Inc. | 951,454 | 292,514 | — |
| **(21)** | **TOTAL** | 18,248,957 | $ 31,676,828 | $ 32,221,005 |

(1)   Mr. Zhou Min Ni owns a 40% equity interest in Golden Poultry, LLC.
(2)   Mr. Zhou Min Ni owns a 30% equity interest in Eastern Fresh LLC.
(3)   Mr. Zhou Min Ni is the legal representative in Fujian RongFeng Plastic Co., Ltd.
(4)   Mr. Jian Ming Ni owns a 66.6% equity interest in NC Good Taste Noodle Inc.
(5)   Mr. Zhou Min Ni owns a 100% equity interest in Fuzhou (Hanfeng) Information Tec.
(6)   N&F Logistic, Inc., one of HF Group's related parties, owns a 70% equity interest in Fortune one Foods Inc.
(7)   Mr. Zhou Min Ni owns a 25% equity interest in N&F Logistic, Inc.
(8)   Mr. Zhou Min Ni owns a 33.3% equity interest in Collegepoint Distribution, LLC.
(9)   Mr. Zhou Min Ni owns a 45% equity interest in Enson Seafood GA, Inc.
(10)  Amanda Ni, the daughter of Mr. Zhou Min Ni, owns a 19% equity interest in New Day Top Trading Inc.
(11)  Mr. Zhou Min Ni owns a 25% equity interest in Enson Trading LLC.
(12)  Mr. Zhou Min Ni owns a 25% equity interest in Ocean Pacific Seafood Group.
(13)  Mr. Zhou Min Ni owns a 40% equity interest in Allstate Trading Company Inc.
(14)  Tina Ni, the daughter of Mr. Zhou Min Ni, owns a 50% equity interest in Eagle Food Service LLC.
(15)  Mr. Zhou Min Ni owns a 30% equity interest in Han Feng Global Inc. d/b/a NSG International.
(16)  Mr. Zhou Min Ni owns a 30% equity interest in Great Wall Seafood Florida Inc.
(17)  Mr. Zhou Min Ni owns a 30% equity interest in UGO USA Inc.
(18)  Mr. Zhou Min Ni owns a 37% equity interest in iUnited Services.
(19)  Raymond Ni, the son of Mr. Zhou Min Ni, owns 100% of Revolution Automotive, LLC.
(20)  Mr. Zhou Min Ni owns a 25% equity interest in First Choice Seafood Inc.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

25658837.2

23.     Revolution Industry, LLC, an entity fully owned by Defendant Ni's son, Raymond Ni, purportedly made $3.4 million from sales with the Company in 2018 and 2019, and received more than $1 million in "advance payments" during that period.  It also had its principle address at HF Food's headquarters at the time.  Despite Revolution Industry, LLC's description of the nature of its business as "Food Processing, Distribution" in its corporate records, the analyst found no discernible signs that Revolution Industry, LLC was an operative business.

24.     The Company, while under the management of Defendant Ni, also extended a $483,000 loan to Revolution Automotive, LLC in March 2018, according to the Company's Schedule 14A filing on October 1, 2019.  However, the analyst's investigation uncovered that the only discernable assets held by Revolution Automotive, LLC, a company fully owned by Raymond Ni, are titles to nine Ferraris and two Porsches, valued at approximately $2.9 million:

| Car | MSRP |
| --- | --- |
| 2019 Ferrari 288 Pista | $345,300 |
| 2019 Ferrari Portofino | $210,783 |
| 2019 Ferrari GTC 2 Lusso T | $337,830 |
| 2006 Ferrari F430 | $193,984 |
| 2007 Ferrari GTB Fiorano 599 | $254,034 |
| 2015 Ferrari Spider 458 Speciale | $245,000 |
| 2009 Ferrari Scuderia Spider 430 | $281,618 |
| 2018 Porsche GT2 RS 911 | $293,200 |
| 2018 Ferrari 812 Superfast | $335,275 |
| 2018 Ferrari 488 Spider | $280,900 |
| 2018 Porsche GT3 911 | $143,600 |
| **Total** | **$2,921,524** |

25.     HF Foods also paid approximately $1 million for purchases to UGO USA, Inc., a related-party entity which was based out of the same address as HF Foods' headquarters at the time. Defendant Ni owned a 30% interest in UGO USA, Inc., which the analyst report alleged did not appear to be an operational business.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

26.     Between 2017 and 2019, HF Foods paid $17 million for purchases with Eastern Fresh, LLC.  Defendant Ni owned a 30% interest in Eastern Fresh, LLC.  However, while listed as a separate related party, the analyst report alleged that Eastern Fresh, LLC was in fact a subsidiary of HF Foods.

27.     Defendant Ni also owned 45% of the shares of Enson Seafood GA, Inc., a related-party entity that took over HF Foods' lease of a building in Pooler, Georgia, and that received a nearly-$2 million loan in March 1, 2019.

**Defendant Ni's Purchase of Cash Loans Issued by HF Foods Using HF Foods Stock**

28.     According to the Form 8-K disclosure of a loan purchase and sale agreement dated September 30, 2019, Defendant Ni, in his personal capacity, bought approximately $12 million in cash loans originated by HF Foods to four entities, including Revolution Automotive, LLC and Enson Seafood GA, Inc., with 1,203,803 shares of the Company.  This tactic purportedly allowed Defendant Ni to convert his illiquid stock to cash extracted from the Company through improper related-party loans.

**Defendant Ni's Conduct Subjected Himself and the Company to Multiple Litigations and Investigations**

29.     In response to the allegations in the analyst report, the Company's Board of Directors appointed a Special Committee of Independent Directors (the "Special Investigation Committee") to conduct an internal independent investigation with the assistance of counsel.

30.     In addition, Defendant Ni and the Company, along with other officers, were named as defendants in several federal securities fraud class action lawsuits, as well as a stockholder derivative action filed in the Court of Chancery of the State of Delaware.  *See Jesus Mendoza v. HF Foods Group Inc. et al*, 2:20-cv-02929 (C.D. Cal. Mar. 29, 2020); *Walter Ponce-Sanchez v. HF Foods Group Inc. et al*, No. 2:20-cv-03967 (C.D. Cal. Apr. 30, 2020); J*esus Mendoza v. Zhou Min Ni et al*, No. 2:20-cv-05300 (C.D. Cal. June 15, 2020); *Jim Bishop v. Zhou Min Ni et al*, No. 2:20-cv-10657 (C.D. Cal. Nov. 23, 2020); *Bishop v. Ni et al*, No. 1:20-cv-01103 (D. Del. Aug. 21, 2020); *Bishop v. Ni et al*, No. 2022-0736 (Del. Ch. Aug. 19, 2022).

31.     The SEC also initiated a formal, non-public investigation of the Company, and the SEC informally requested, and later issued a subpoena for, documents and other information.  The subpoena relates to but is not necessarily limited to the matters identified in the foregoing actions. The Special Investigation Committee and the Company have cooperated and are currently cooperating with the SEC in this matter.  On information and belief, the SEC investigation remains active, and it is possible that the Company, as well as Mr. and Mrs. Ni could be subject to actions by the Commission.  The Special Investigation Committee determined that this exposure is the result of misconduct by Mr. and Mrs. Ni and others working under their direction.

32.     While the SEC investigation is ongoing, the Special Investigation Committee has made certain factual findings based on evidence adduced during its investigation, and made recommendations to management regarding improvements to Company operations and structure, including but not limited to its dealings with related parties.  The Company continues to implement these improvements.

33.     The Special Investigation Committee found, among other things, that Zhou Min Ni and his associates caused the Company to enter in a series of fictitious transactions with entities that he controlled and established for the purpose of siphoning funds out of HF Foods and routing those funds to Zhou Min Ni and his son, Raymond Ni.

34.     For instance, the Special Investigation Committee found that in 2018, Zhou Min Ni caused the Company to "spin off" its eggroll mix business to a separate company called Revolution Industry, an entity on paper owned and managed by his son, Raymond Ni.  In fact, the Committee found that Raymond Ni, who at the time was a minor, had no involvement in Revolution Industry and that it was a front for Zhou Min Ni.  Moreover, even after the so-called "spin off," the business continued to be operated by HF Foods staff, using HF foods equipment, out of HF Foods facilities. The only change was that now the fictitious vendor Revolution Industry could be used as the Ni family's personal piggybank in the form of fake vendor payments.  Indeed, the Committee found that these fake vendor payments were used to fund the purchase of exotic cars for the Ni family's personal use.

11

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

35.     The Special Investigation Committee found that Zhou Min Ni repeated this pattern with respect to other fictitious entities in order to divert Company funds to the Ni family, including for the purchase of a fleet of luxury cars for the Nis' personal use.  The Committee further found that Zhou Min Ni and his co-conspirators affirmatively misled the HF Foods Board about the Company's relationship with these entities in order to conceal his use of the Company's funds for personal benefit.  Nor were these transactions properly disclosed in the Company's public filings.

36.     As it turned out, Defendant Zhou Min Ni and Raymond Ni were not the only ones involved in financial impropriety.  Defendant Weihui ("Vincent") Kwok—who is now a self-proclaimed member of the Xu/Ni Group attempting to effectuate a takeover of HF Foods—was discovered by the Special Investigation Committee to have paid nearly $200,000 in illegal kickbacks to a Company supplier in his position as an employee of HF Foods between 2018-2020.  As a result, the Company terminated Defendant Kwok's employment.

37.     In addition to the Special Investigation Committee, the Company created a Special Litigation Committee ("SLC"), which retained the law firms of Paul Weiss and DLA Piper to represent it.  The SLC determined that Mr. and Mrs. Ni, and the former Chief Financial Officer, Jonathan Ni, had breached their fiduciary duties to the company and caused harm to stockholders in a variety of ways.  The SLC determined to bring an action against Mr. and Mrs. Ni and Jonathan Ni.  Recently, that action was settled, and as part of that settlement, Mr. and Mrs. Ni will be required to repay $9.25 million to the Company.  That settlement is awaiting approval from the Delaware Court of Chancery.

38.     Without any hint of irony, Defendants Zhou Min Ni and Weihui Kwok have now combined their ill-gotten gains to again raid the company they previously plundered.

***Defendant Xu's Prior Improper Use of Related-Party Transactions***

39.     Defendant Xu's business track record is equal to Defendant Ni's in ignominy, as it also reflects a history of pillaging public companies by siphoning corporate funds through improper related-party transactions.

40.     In 2016, Defendant Xu reached agreements with shareholders to obtain control of two public companies registered in the People's Republic of China (the "PRC"), Zhejiang Busen

12

Garments Co. Ltd. ("Busen"), a clothing company, and Tianma Ltd. ("Tianma"), a bearing manufacturing company, by installing himself as chief executive officer of each company. Defendant Xu then converted Busen into a financial technology company, and transformed Tianma into a cloud computing company.

41.   Following the increased stock prices of these companies resulting from Defendant Xu's investment, and the expectation that the restructuring of both Busen and Tianma would focus on growth markets based on Defendant Xu's self-promoted reputation as an "angel investor," Defendant Xu improperly diverted the companies' liquidity to other companies he owned. As a result, in December 2017, the stock prices of both Tianma and Busen crashed, and shareholders of the companies collectively lost approximately 7.8 billion RMB ($1.15 billion). Chinese regulators, including the Schenzhen Stock Exchange ("SZSE") and the China Securities Regulatory Commission ("CRSC") responded by banning Defendant Xu from participating in Chinese capital markets.  The CRSC also imposed the maximum penalty of 900,000 RMB (approximately $136,260).  Mr. Xu's pattern of conduct to take control of public companies, then, through loans and acquisitions of his own shell companies, completely empty these companies' coffers is a tactic that the PRC media has described as "empty glove, white wolf."

42.   Indeed, in April 2017, the CRSC issued a warning letter to Defendant Xu for his failure to disclose a related-party transaction.  The CRSC investigation revealed that Busen's joint investment of 100 million RMB with Beijing Zhixin Commercial Factoring Co. Ltd. ("Zhixin") to establish the Xi'an Galaxy Internet Financial Assets Trading Center Co. Ltd. was not an arm's-length transaction, because Zhixin was owned by Beijing Puli Technology Co. Ltd., which was in turn jointly owned by Defendant Xu's two brothers-in-law.

43.   According to a report issued by the SZSE in July 2019, Defendant Xu and two other directors and executives of Tianma misappropriated 2.95 billion RMB in non-operating funds of the company between May 2017 and March 2018, through the use of improper commercial transactions, receivables, and unlawful loans, which collectively accounted for 76.54% of Tianma's audited net assets at the end of 2017. The SZSE investigation also revealed that between August

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

13

2017 and September 2018, Defendant Xu and others provided guarantees for their own debts in the name of Tianma, totaling 360 million RMB.

44.    The CSRC also investigated Defendant Xu's misconduct at Tianma, and issued an administrative penalty report on October 30, 2019.  Among other things, the CSRC investigation revealed the following improper related party transactions: (1) a September 2017 loan from Tianma for 70 million RMB to Beijing Xiangyun Microfinance Co., Ltd., to be collected by Beijing Galaxy World Group Co., Ltd., a company Defendant Xu owned; (2) an October 2017 loan from Tianma for 100 million RMB to Deqing County Small and Medium Enterprise Financial Service Center Co. Ltd., to be collected by Horgos Shiletao Venture Capital Co., Ltd., owned by Defendant Xu; and (3) a December 2017 transfer of 566 million RMB of Tianma shares to the accounts of Galaxy Internet Group Co., Ltd., of which Defendant Xu was the largest shareholder, to repay Defendant Xu's and his controlled companies' loans.

45.    Upon information and belief, Defendant Xu fled to the United States from the PRC in or about 2017 or 2018 in order to evade creditors and the financial regulator penalties. Notwithstanding, Mr. Xu is now engaged in nearly identical market manipulation conduct vis-à-vis the Company, as described herein.

**Following Defendant Ni's Plunder, The Company Instituted Structural Changes, Including the Retirement of Defendant Ni as Co-CEO and Chairman of the Board.**

46.    Effective February 23, 2021, Zhou Min Ni resigned as Co-CEO and Chairman of the board of the Company.

47.    The Special Investigation Committee recommended, and management is implementing, changes to how the company handles related party transactions.

48.    In addition, Mr. Peter Zhang was appointed as sole CEO, and was given day-to-day management responsibilities.

49.    Moreover, the board unanimously appointed a new, independent director, Mr. Russell T. Libby, to take over as chairman of board of directors.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

14

**Xu/Ni Group's Takeover Attempt**

50.     Following this playbook of market manipulation at shareholder expense, the Xu/Ni Group's takeover scheme was launched in early October 2022 when Defendant Xu, upon information and belief, in coordination with Defendant Ni and the other Xu/Ni Group members, sent unsolicited tender offers, via WeChat, a mobile messaging platform, to a group of Company employees including without limitation Jason Zheng, Paul Guan, Allen Lin, John Zhang, and Steve Lin (the "General Managers").

51.     The WeChat messages from Defendant Xu requested a meeting with the General Managers.  Certain of the General Mangers responded to the WeChat message from Defendant Xu, and informed Defendant Xu that a meeting of all Company general managers was scheduled for later in October 2022 in Las Vegas, and suggested a meeting with Defendant Xu in Las Vegas at that same time.

52.     On or about October 19, 2022, Defendant Xu, along with Mr. ZhuangHong Lin, a Florida business owner, traveled to Las Vegas. That same day, the two met with the General Managers, in person, at Caesar's Place.  Defendant Xu represented that Mr. Lin was a potential investor in the Company.

53.     Defendant Xu opened the October 19, 2022 meeting by explaining to the General Managers that he, in coordination with the Xu/Ni Group, had been in recent contact with unidentified Company shareholders regarding purchasing their shares in the Company.  Defendant Xu inquired of each General Manager how many shares in the Company they owned; no one responded with an exact amount but instead provided Defendant Xu with an estimate of how many shares they owned.

54.     Defendant Xu then made an unsolicited offer to purchase each of the General Managers' shares of Company stock for either $6 per share in cash or for the equivalent of $10 per share in stock in his unrelated company called Fresh2 (the "Tender Offer").

55.     Upon information and belief, HF Foods' average daily per share closing price on NASDAQ in October 2022 was approximately $3.87.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15

56.     As of the date of this filing, neither Defendant Xu nor any member of the Xu/Ni Group has filed a Schedule TO related to the Tender Offer, as required by the Securities Laws.

57.     Similar as of October 19, 2022, the date of the Tender Offer as part of the takeover scheme, no member of the Xu/Ni Group had filed a Schedule 13D as required by the Securities Laws. It was not until May 5, 2023 that the Xu/Ni Group filed a (deficient) Schedule 13D.

58.     Defendant Xu further stated that his Tender Offer "was very good" as compared to the Company's stock price, and that it was a firm offer. He also said that his company, Fresh2, was worth $100-200 million in value, which was "more than HF Foods," according to Defendant Xu. However, according to the Fresh2 Ecommerce website, it entered into a definitive stock purchase agreement to be fully acquired by AnPac Bio-Medical Science Co., Ltd., on February 7, 2023 for only $2.1 million.  Upon information and belief, Defendant Xu also made this same Tender Offer to other Company shareholders in connection with their discussions, as described above.

59.     After explaining how "good" his offer was, Defendant Xu further bolstered his Tender Offer by representing to the General Managers that he had obtained control of the Company and that he controlled a majority of outstanding Company stock. Defendant Xu did not elaborate on how he obtained the outstanding shares in Company stock, but he did represent that: (1) he was interested in acquiring a large position in HF Foods shares; (2) he said he had already spoken with other HF Foods stockholders before speaking with us and that he would be speaking with other HF Foods stockholders in the near future; (3) and, that he had entered into signed agreements with other HF Foods stockholders for the purchase of their shares.

60.     Upon information and belief, as of October 19, 2022, each of these aforementioned statements was misleading or inaccurate or both, and were made for the purposes of fraudulently inducing the General Managers to accept the Tender Offer.

61.     But, Defendant Xu did not stop there. He further represented to the General Managers that once he joins HF Foods' Board or management, he will either take no salary or a $1 per year salary as CEO and Chairman of the Company.  He went on to state that his goal is to combine HF Foods with his company, Fresh2. Defendant Xu further represented that once he is CEO and Chairman, the Company's "stock will go up and up."

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

62.     Also in connection with the Tender Offer, Defendant Xu told the General Managers that "you can stay" at the company after the takeover, and that he would need people like the General Managers to work at the company after his takeover. Further, as a result of this statement, the General Managers were concerned that their continued employment with the Company would be in jeopardy if they did not agree to the Tender Offer and Defendant Xu took charge of the Company.  Upon information and belief, this statement was a clear pressure tactic to leverage the General Managers careers at the Company in order to get them to accept the Tender Offer.

63.     Notwithstanding these coercive tactics, no General Manager accepted the Tender Offer, and the meeting ended.

64.     In the days following the October 19, 2022 Tender Offer, each General Manager rejected it.  However, as stated above, upon information and belief, other HF Foods employees and stockholders were invited to parties by and/or met with Defendant Xu and that these invitations and meetings were for the purpose of purchasing their company shares.

65.     Defendant Xu additionally coerced stockholder-employees into voting for him at the upcoming annual meeting, which further demonstrates that he is behind the fraudulent proxy solicitations.

***HF Foods Announces a June 1, 2023 Annual Meeting and Issues Bona Fide Proxy Statement***

66.     On March 31, 2023, HF Foods issued a press release announcing it would hold its Combined 2022 and 2023 Annual Meeting of Stockholders on June 1, 2023, and setting the close of business on April 6, 2023 as the record date for determining the stockholders entitled to notice of and to vote at the Annual meeting.

67.     On April 28, 2023, HF Foods properly issued a Schedule 14A proxy statement (the "Bona Fide Proxy Statement") and a Notice of Annual Meeting of Stockholders to be held on June 1, 2023 (the "Annual Meeting Notice").

68.     The Annual Meeting Notice and Bona Fide Proxy Statement advised stockholders that the meeting would be held in order to (1) elect the five members to serve on the Board of Directors, (2) to ratify the selection of BDO USA, LLP as the Company's independent registered public accounting firm for the year ending December 31, 2023, (3) to consider a non-binding

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

17

advisory vote on the compensation of the named executive officers, and (4) to transact such other business properly brought before the meeting.

69.     The first proposal of the bona fide proxy statement filed by HF Foods provided stated that the Nominating Committee of the Board of Directors had unanimously recommended  Russell T. Libby, Xiao Mou Zhang, Valerie Chase, Dr. Hong Wang and Prudence Kuai as director nominees, to serve, if elected, until the 2024 Annual Meeting of Stockholders and until his or her successor is duly elected and qualified, or until such director's earlier death, resignation, or removal.  The proposal also notified stockholders that the Nominating Committee of the Board of Directors would consider director candidates recommended by stockholders so long as such recommendations were in compliance with HF Foods' certificate of incorporation, its bylaws, and applicable laws, rules, and regulations, including those promulgated by the SEC.

***HF Foods' Bylaws Required Proposed Director Nominations to Comply with Certain Requirements***

70.     Sections 2.7 and 2.8 of Article II of the Amended and Restated Bylaws of HF Foods (the "Bylaws") set forth the requirements for stockholders to notify the Company of any intent to nominate directors in advance of an annual meeting. Among other requirements, the bylaws obligate stockholders seeking to recommend director candidates (1) to be a stockholder of record at the time of its director nomination notice, (2) to provide identifying information for the proposing stockholder as well as information related to the relationship between the proposing stockholder and the director nominee, and (3) to complete a questionnaire with respect to the background, independence and qualifications of such person and the background of any other person or entity on whose behalf the nomination is being made.

71.     As provided in Section 2.7(a)(i):

Nominations of persons for election to the board of directors and the proposal of other business to be considered by the stockholders at an annual meeting of stockholders may be made only (A) pursuant to the Corporation's notice of meeting (or any supplement thereto), (B) by or at the direction of the board of directors or any committee thereof or (C) by any stockholder of the Corporation who (i) is a stockholder of record at the time of giving of notice provided for in this Section 2.7 and at the time of the annual meeting, (ii) is entitled to vote at the relevant annual

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

meeting and (iii) complies with the notice procedures set forth in this Section 2.7 and applicable law as to such business or nomination.  For the avoidance of doubt, the foregoing clause (C) shall be the exclusive means for a stockholder to make director nominations and shall be the exclusive means for a stockholder to propose any other business[.]

72.     The applicable deadline for a qualifying stockholder to notice an intent to nominate directors is set forth in Section 2.7(a)(ii), which states in relevant part:

[I]f the first public announcement . . . of the date of such annual meeting is less than 100 days prior to the date of such annual meeting, notice by the stockholder to be timely must be so delivered on or before the 10th day following the day on which public announcement of the date of such meeting is first made by the Corporation.

73.     The June 1, 2023 date of the Annual Meeting was announced in HF Foods' public press release on March 31, 2023.  Therefore, the deadline for noticing an intent to nominate directors was 10 days later, on April 10, 2023.

74.     Section 2.7(b)(i) authorizes the chairman and the board to determine if a proposal adequately complies with the Company's bylaws and, upon a finding that a proposal is deficient, to reject the nomination(s).  In relevant part, this provision states:

[T]he Chairman, the board of directors or the chairman of the meeting shall have the power to determine whether a nomination . . . was made or proposed, as the case may be, in accordance with the procedures set forth in these by-laws and, if any proposed nomination or other business is not in compliance with these by-laws, then except as otherwise required by applicable law, the chairman of the meeting shall have the power to declare that such nomination shall be disregarded[.]

***Xu/Ni Group Lays the Building Blocks for its Illegal Proxy War By Submitting Defective Shareholder Proposal on April 10, 2023.***

75.     On the heels of the Company's March 31, 2023 8-K announcing that the FY 2022 and FY 2023 annual meeting of shareholders is going to take place on June 1, 2023, the Xu/Ni Group sharpened their focus on effectuating the next step in its illegal takeover scheme.  On April 10, 2023, the Xu/Ni Group, specifically Defendants Weihui Kwok and Yuanyuan Wu sent a letter to the Company explaining that, pursuant to Section 2.7 and 2.8 of Article II of Bylaws, they intended to nominate five persons as Directors for election to the Board of Directors of the Company at the 2022-2023 Annual Meeting of Stockholders of the Company (the "Nomination

Notice"). April 10, 2023 was the deadline for making a proposal for matters to be evaluated and, if proper, presented at the 2022-2023 annual stockholder meeting.

76.     Further, the April 10, 2023 letter stated that:

We, Weihui Kwok and Yuanyuan Wu, formed a group (the "Group") as of the date hereof that intends to engage in solicitation with respect to the nomination of Nominees. As part of the Group, the Proposing Shareholders have joined with the Irrevocable Trust for Raymond Ni (the "Trust"), a current beneficial owner of 5,591,553 shares of Common Stock. Schedule C lists the shares that the Trust holds. The Group intends to file a 13D amendment to reflect the group's holdings and intentions. The Trust previously filed a Schedule 13D with respect to its holdings, on August 31, 2018 and we refer you to the filing. As reported therein, on August 22, 2018, pursuant to a merger agreement dated as of March 28, 2018, or the "Acquisition Agreement," by and among Atlantic Acquisition Corp. ("Atlantic"), HF Group Merger Sub Inc., a Delaware corporation and wholly owned subsidiary of Atlantic, HF Group Holding Corporation, a North Carolina corporation, or "HF Group," and the stockholders of HF Group, the Trust received 5,591,553 shares of the Common Stock of the Company in exchange for its equity interest in HF Group.

77.     Upon information and belief, Defendants Xu and Ni are also acting in concert with the other members of the Xu/Ni Group.  Specifically, as described above, Defendant Xu has been actively soliciting significant stockholders of the Company to acquire their shares and secure their votes in advance of the Annual Meeting in an apparent effort to engineer his takeover of the Company.  The Purported Nominations, among other things, directly connect Defendant Xu with the Group.  The initial nominees submitted by the Xu/Ni Group on April 10, 2023 included Defendant Xu's son and niece, both of whom have served as his front person in other situations. Although his son was removed from the Purported Nominees, his niece remains one.  Moreover, the Company has reason to believe that the Trust in the past has been a group member with, and may continue to be a group member with, Zhou Min Ni, the former chairman and CEO of the Company and the father of Raymond Ni, the Trust's beneficiary.

78.     In addition, the letter stated that Defendant Weihui Kwok is the record owner of 399,397 shares of the Company's common stock and Defendant Yuanyuan Wu is the record owner of 44,250 shares of common stock.

79.     To be sure, over 6 months after the Xu/Ni Group formed to take over the Company, it still had not filed the required Section 13D statement.

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

80.     Further, upon information and belief, Defendants Kwok and Wu were not (and are not) Company shareholders of record as of April 10, 2023.

81.     Moreover, the letter stated that the Xu/Ni Group intends to nominate five persons as Directors for election to the Board of Directors of the Company at the 2022-2023 Annual Meeting of Stockholders of the Company.

82.     The Board immediately undertook to evaluate the Xu/Ni Groups' letter, including whether it complied with the notice and substance requirements of Section 2.7 of the Bylaws required to be satisfied in order to present proposals for a shareholder vote at the annual meeting.

83.     Section 2.7 of the Bylaws sets forth the requirements for a stockholder of record to timely bring any nominations or other business before an annual meeting of the Company. The purpose of Section 2.7 is to provide clarity and certainty, and to ensure complete and accurate information is available to stockholders concerning the Company's elections.

84.     On April 11, 2023, the Board sent a letter to Defendants Kwok and Wu. The Board's letter explained that upon investigating the proposal, the Board determined that the proposal was materially non-compliant with Section 2.7 and, among other things, failed to satisfy key goals of that Bylaw provision, namely certainty and transparency to stockholders concerning the nominating stockholders and the Board nominees.  For these reasons, the Board rejected the April 10, 2023 Nomination Notice.

85.     The Board's assessment of the April 10, 2023 letter, and whether the letter satisfied the Bylaws, is a business judgment analysis.  Thus, the Board's rejection of the letter is squarely within the safe harbor of the business judgment rule and not subject to judicial intervention under Delaware corporate law.

86.     On March 31, 2023, HF Foods issued a press release announcing it would hold its Combined 2022 and 2023 Annual Meeting of Stockholders on June 1, 2023, and setting the close of business on April 6, 2023 as the record date for determining the stockholders entitled to notice of and to vote at the Annual meeting.

21

87.     On April 28, 2023, HF Foods properly issued a Schedule 14A proxy statement (the "Bona Fide Proxy Statement") and a Notice of Annual Meeting of Stockholders to be held on June 1, 2023 (the "Annual Meeting Notice").

88.     The Annual Meeting Notice and Bona Fide Proxy Statement advised stockholders that the meeting would be held in order to (1) elect the five members to serve on the Board of Directors, (2) to ratify the selection of BDO USA, LLP as the Company's independent registered public accounting firm for the year ending December 31, 2023, (3) to consider a non-binding advisory vote on the compensation of the named executive officers, and (4) to transact such other business properly brought before the meeting.

89.     The first proposal of the bona fide proxy statement filed by HF Foods provided stated that the Nominating Committee of the Board of Directors had unanimously recommended Russell T. Libby, Xiao Mou Zhang, Valerie Chase, Dr. Hong Wang and Prudence Kuai as director nominees, to serve, if elected, until the 2024 Annual Meeting of Stockholders and until his or her successor is duly elected and qualified, or until such director's earlier death, resignation, or removal. The proposal also notified stockholders that the Nominating Committee of the Board of Directors would consider director candidates recommended by stockholders so long as such recommendations were in compliance with HF Foods' certificate of incorporation, its bylaws, and applicable laws, rules, and regulations, including those promulgated by the SEC.

***Xu/Ni Group Files a Materially False and Misleading Schedule 13D/A and a Materially False and Misleading Proxy Statement with the SEC on May 5, 2023.***

90.     Willfully ignoring the federal securities laws, Delaware corporate law, Company bylaws, the Company's Bona Fide Proxy Statement, and the Board's April 11, 2023 letter rejecting the Xu/Ni Group's Nomination Notice, the Xu/Ni Group initiated an illegal proxy war. Specifically, on May 5, 2023, the Xu/Ni Group filed two documents with the U.S. Securities and Exchange Commission, each of which contained material misstatements and omissions and are materially misleading: (1) a Schedule 13D/A for the Xu/Ni Group (the "Schedule 13D/A"); and, (2) a Schedule 14A Proxy Statement (the "Fraudulent Proxy Statement").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

22

25658837.2

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

91.     The Schedule 13D/A was materially false and misleading for a number of reasons. First, it represented that on April 10, 2023, Defendants Kwok, Xu, and the Trust formed a group with the sole intention to propose changes in the present board of directors or management of the Company, and solicit votes for such result.  As stated above, this is false, as the Xu/Ni Group had formed well before April 10, 2023.

92.     Specifically, the May 5, 2023 Schedule 13D/A represented that the Xu/Ni Group's April 10, 2023 letter in fact complied with Section 2.7 of the Bylaws.  This is patently false.  As stated above, the Schedule 13D/A did not comply with Section 2.7 of the Bylaws as determined by the Board's action in its April 11, 2023 letter, and the representation to shareholders and the market that it did is materially false and misleading.

93.     Further, the Schedule 13D/A was also materially false and misleading because it failed to include Defendants Xu and Ni as part of their takeover group.  As explained above, Defendants Xu and Ni have been acting in concert with Defendants Kwok and Wu since at least October 2022.  Further, the Schedule 13D/A was also deficient because it included the Trust as a Proposing Person but the actual April 10, 2023 Nomination Notice submitted to the Board did not include the Trust as part of the takeover group.

94.     Similarly, the trustee of the Trust, Fai Lam, is a control person within the meaning of Schedule 13D.  For this reason, Trustee Lam was required to be a party to the 13D filing and was not. This is yet another materially false and misleading aspect of the Schedule 13D/A.

95.     Finally, the Schedule 13D/A is also materially misleading in that it solicits votes for the Xu/Ni Group's April 10, 2023 proposal in violation of the federal securities laws, because there is no mechanism by which the nominations can be put before shareholders for a vote at the June 1, 2023 meeting.

96.     The Schedule 14A Fraudulent Proxy Statement is likewise materially false and misleading in many ways. First, by virtue of the Board's rejection of the April 10, 2023 Nomination Notice as deficient and non-compliant, the mere fact that the Xu/Ni Group filed a 14A is itself improper given there was no legally sufficient basis for the Xu/Ni Group to solicit proxies for their proposed slate of directors. Their April 10, 2023 Proposal was untimely and insufficient under the

Bylaws.  By filing the untimely Fraudulent Proxy Statement, the Xu/Ni Group flouted not only the Company's Bylaws but the meaningful protections of notice and transparency for shareholder proposals enshrined in the federal securities laws.  Indeed, the mere existence of a filed Xu/Ni Group Schedule 14A is materially misleading to shareholders and an abuse of the proxy solicitation provisions under the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

97.    Additionally, on May 10, 2023, the Company's Board sent cease and desist letters to each member of the Xu/Ni Group that instructed each member to cease engaging in the conduct described in this complaint.

98.    No member of the Xu/Ni Group responded.

99.    In addition, the Fraudulent Proxy Statement is also materially false and misleading because it misrepresents that the April 10, 2023 Nomination Notice complied with Company Bylaws when it did not.

100.    Third, the Fraudulent Proxy Statement is also materially false and misleading because it fails to disclose and include the Trust's control person, Trustee Lam, as required by Section 14(a).

101.    Fourth, the Fraudulent Proxy Statement is also materially false and misleading because it nominated a different slate of directors than those contained in the April 10, 2023 Proposal.  The initial nominees submitted by the Xu/Ni Group included both Defendant Xu's son and niece, whom have served as his front persons in other situations.  His son was removed from the in the Schedule 14A, but his niece remains one of the putative nominees.

102.    Fifth, the Fraudulent Proxy Statement is also materially false and misleading because it represented that the Company's proxy was not bona fide, failed to include certain information with respect to the shareholder proposal information required to be presented pursuant to Rule 14a-5(e), failed to include the Company's nominees on the card despite the fact that the Company's Bona Fide Proxy Statement was filed on April 28, and includes confusing and possibly misleading typographical errors, such as references to an undefined entity ("RAYMOND NI Capital").

25658837.2

103.    Lastly, the Fraudulent Proxy Statement is also materially misleading because it is untimely under Rule 14. The Fraudulent Proxy Statement was filed in preliminary form 7 days after the Company's Bon Fide Proxy statement was filed, and fewer than 25 days prior to the scheduled date of the Annual Meeting, rendering it deficient under Rule 14a-19(a)(2).

## COUNT I

## (Violations of Section 13(d) of the Exchange Act)

104.    HF Foods repeats and realleges the allegations of paragraphs 1-101 of this Complaint as if fully set forth herein.

105.    Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), requires any person or group that acquires more than five percent of a class of registered securities to file a detailed statement with the SEC and with the issuer of the security. The purpose of the statute is to protect stockholders and the investing public against undisclosed, surprise shifts in corporate control by disclosing potential changes in corporate control before they occur.

106.    Section 13(d) and SEC Rule 13d-1(a), 17 C.F.R. § 240.13d-1(a), require the reporting person or group to disclose, in its Schedule 13D filing, all material information concerning the plans and proposals of the acquiring person or group, including: (a) the identity and background of the person or persons filing the statement; (b) the source and amount of funds or other consideration used to make the purchases of stock; (c) the purpose of the acquisition of the securities, including a description of any plans or proposals for extraordinary corporate transactions; and (d) information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities and guarantees against loss or guarantees of profits.

107.    Schedule 13D must be filed within ten days after the acquisition of an interest greater than five percent.

108.    Defendants were acting as a group as defined by Section 13(d)(3) and the accompanying SEC rules "for the purpose of acquiring, holding, voting, or disposing of securities of an issuer." Defendants violated Section 13(d) by failing to disclose in Schedule 13D filings made on July 26 and July 30, 2018 multiple material facts concerning their formation of a group,

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

the identities and backgrounds of its members, the contracts, arrangements or understandings of its members with respect to the Company, and its plans to change or influence control of HF Foods.

109.    Defendants have continued to violate Section 13(d) by failing to update their Schedule 13D filings with such material disclosures.

110.    As a direct and proximate result of the acts and conduct of defendants, HF Foods and its stockholders have been and continue to be deceived and defrauded. HF Foods and its stockholders have no adequate remedy at law for the deception and fraud that has occurred to date and threatens to continue, and will be irreparably harmed in the absence of the declaratory and equitable relief HF Foods seeks due to defendants' repeated failures to make full and accurate disclosures.

## COUNT II

### (Violations of Section 14(a) of the Exchange Act)

111.    HF Foods repeats and realleges each and every allegation contained in paragraphs 1-108 above as if set forth in full.

112.    Section 14(a), 15 U.S.C. § 78n(a), of the Exchange Act and the SEC's proxy rules and regulations govern the information to be furnished to security holders and to be filed with the SEC when the proxies, consents, or authorizations of security holders are solicited. Section 14(a) makes it unlawful for any person to use the mails or the means or instrumentalities of interstate commerce to solicit or permit the use of his name to solicit any proxy or consent or authorization in contravention of the rules and regulations of the SEC.  SEC Rule 14a-9 prohibits the solicitation of proxies by means of communications that contain any statement which omits to state material facts or is false and misleading with respect to any material fact.

113.    Among other things, Section 14(a) requires persons acting as a group in soliciting proxies to make disclosures regarding the identity of the members of the group, their interests in a company's securities, and any contracts, arrangements or understandings among the members of the group in Schedule 14A filings. See 17 C.F.R. § 240.14a-101.

114.    Defendants violated Section 14(a) and the SEC rules and regulations by failing to disclose their formation of a group, the identities and backgrounds of its members, the contracts,

25658837.2

arrangements or understandings of its members with respect to the Company, and its plans to change or influence control of HF Foods. Defendants have failed disclose that they are soliciting proxies for the purpose of effectuating their plan to take over the Company through voting in directors they control.

115.    Defendants' unlawful proxy solicitations have deprived HF Foods stockholders of their right to make informed decisions about the future of the Company and are likely to distort the outcome of the proxy contest.

116.    As a direct and proximate result of the acts and conduct of defendants, HF Foods and its stockholders have been and continue to be deceived and defrauded. HF Foods and its stockholders have no adequate remedy at law for the deception and fraud that has occurred to date and threatens to continue, and will be irreparably harmed in the absence of the declaratory and equitable relief HF Foods seeks due to defendants' repeated failures to make full and accurate disclosures.

## COUNT III

### (Violations of Section 14(e) of the Exchange Act)

117.    HF Foods repeats and realleges each and every allegation contained in paragraphs 1-114 above as if set forth in full.

118.    Section 14(e) of the Exchange Act, and the SEC's proxy rules and regulations promulgated thereunder, makes it unlawful for any person to make any untrue statement of a material fact or to make a misleadingly incomplete statement, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with a tender offer. See 15 U.S.C. § 78n(e).

119.    Defendants violated Section 14(e) by making an unlawful and unsolicited offer to the General Managers to purchase shares of Company stock for either $6 per share in cash or for the equivalent of $10 per share in stock in Fresh2.  As part of this offer, Defendant Xu falsely represented that Fresh2 was worth $100–200 million in value.

120.    Defendant Xu also falsely stated that  he had entered into signed agreements with other HF Foods stockholders for the purchase of their shares.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

121.   Defendants also violated Section 14(e) by engaging in manipulative acts and practices in connection with this tender offer.  Defendant Xu's comments to the General Managers that "you can stay" at the Company following the takeover suggested that the General Managers' continued employment would be jeopardized should they refuse to agree to tender their shares and support Defendant Xu's efforts to take control of the Company.

122.   Defendants' unlawful Tender Offer has deprived HF Foods' stockholders of their right to make informed decisions about the future of the Company and is likely to cause irreparable harm to the stockholders absent the relief HF Foods seeks, enjoining Defendants from making unsolicited tender offers in violation of the federal securities laws.

## **PRAYER FOR RELIEF**

1.   Injunctive relief to enjoin Defendants from mailing or otherwise distributing the Fraudulent Proxy Statement to Company stockholders;

2.   Injunctive relief to direct Defendants to amend the Fraudulent Proxy Statement to reflect its illegitimacy;

3.   Injunctive relief to enjoin Defendants from further violations of Sections 13(d) and 14(a) of the Exchange Act.

4.   Injunctive relief to direct Defendants to file with the SEC accurate and complete Schedule 13D disclosures;

5.   Injunctive relief to enjoin Defendants from voting any of their shares prior to such time as this Court ascertains that Defendants have filed accurate and complete Schedule 13D disclosures;

6.   Injunctive relief to enjoin seating any directors improperly nominated;

7.   Disenfranchisement and/or divestiture of shares purchased in violation of securities laws;

8.   Damages for costs and attorneys' fees in connection with investigating and correcting public disclosures; and,

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

9.      Grant such other and further relief as the Court finds proper, just, and equitable.

DATED this 11th day of May 2023.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: ___ */s/ Frank M. Flansburg III* _____
FRANK M. FLANSBURG III, ESQ.
fflansburg@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614

ARNOLD & PORTER KAYE SCHOLER LLP

AARON F. MINER, ESQ. (*pro hac* forthcoming)
Aaron.Miner@arnoldporter.com
SASHA ZHENG, ESQ. (*pro hac* forthcoming)
Sasha.Zheng@arnoldporter.com
ANDREW C. JOHNSON, ESQ. (*pro hac* forthcoming)
Andrew.Johnson@arnoldporter.com
KELLEY CHANGFONG-HAGEN, ESQ. (*pro hac* forthcoming)
Kelley.Changfong-Hagen@arnoldporter.com
AIDAN MULRY, ESQ. (*pro hac* forthcoming)
Aidan.Mulry@arnoldporter.com
250 West 55th Street
New York, NY 10019-9710

*Attorneys for Plaintiff HF Foods Group Inc.*

25658837.2